IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-CR-258-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| RODNEY EARL CANNADY, | ) | |
| | ) | |
| Defendant. | ) | |

On November 27, 2023, Rodney Earl Cannady ("Cannady" or "defendant"), proceeding pro se, moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 206] and filed a memorandum in support [D.E. 207]. In his memorandum, Cannady asked the court to send a copy of his motion to the United States Attorney's Office for the Eastern District of North Carolina [D.E. 207-1].[1] On May 6, 2024, Cannady moved to expedite consideration of his motion for compassionate release [D.E. 208]. On September 9, 2024, the United States responded in opposition [D.E. 218] and filed a sealed exhibit in support.

On September 20, 2024, Cannady, proceeding pro se, moved for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 of the United States Sentencing Guidelines ("Amendment 821") [D.E. 221]. On October 15, 2024, Cannady replied to the United States' response in opposition to Cannady's motion for compassionate release [D.E. 222].

On December 30, 2024, Cannady, again pro se, filed a second motion for a sentence

---

[1] The clerk docketed Cannady's motion and memorandum and the United States responded. See [D.E. 218]. Accordingly, the court denies as moot Cannady's request that the court mail a copy of his motion to the United States Attorney's Office for the Eastern District of North Carolina.

reduction [D.E. 224]. On January 17, 2025, President Biden issued a Warrant of Executive clemency and commuted Cannady's sentence to 280 months' imprisonment, which means Cannady's term of confinement now expires on November 14, 2027. See [D.E. 226]; BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (search by inmate name) (last visited June 20, 2025) (listing Cannady's release date as November 14, 2027).

On March 12, 2025, probation filed a report concerning Cannady's motions for a sentence reduction [D.E. 228]. In that report, probation concluded that, although Amendment 821 applies to Cannady, Amendment 821 does not lower Cannady's advisory guidelines imprisonment range, and the United States agreed with probation's conclusion. See id.; [D.E. 228-1] 1. As explained below, the court denies as moot Cannady's motion to expedite, denies Cannady's motion for compassionate release, and denies Cannady's two motions for a sentence reduction.

I.

The court is very familiar with Cannady's case and has recounted its lengthy procedural history. See, e.g., [D.E. 194, 177, 138, 133, 125, 120, 95, 74, 57]. The court presumes Cannady's familiarity with his criminal convictions and failed postconviction motions. This order recounts only the procedural history relevant to Cannady's latest filings.

On September 4, 2008, a federal grand jury indicted Cannady and charged him with one count of possessing with the intent to distribute 50 grams or more of cocaine base (crack) and a quantity of oxycodone in violation of 21 U.S.C. § 841(a)(1). See [D.E. 1]. Cannady's offense conduct occurred on July 9, 2008. See id. On November 17, 2008, pursuant to a written plea agreement, Cannady pleaded guilty to the charge in the indictment. See [D.E. 16, 17, 31]. On March 25, 2009, the court held Cannady's sentencing hearing. See [D.E. 23, 25, 29]. At the hearing, the court adopted the facts set forth in the Presentence Investigation Report ("PSR") [D.E.

89] and overruled Cannady's objections. See Sentencing Tr. [D.E. 29] 7–16. Initially, the court calculated the advisory guideline range as 262 to 327 months' imprisonment based on a total offense level 34 and criminal history category VI. See id. During the sentencing hearing, Cannady perjured himself. See id. at 16–36. Accordingly, the court found that Cannady did not accept responsibility and denied a three-level reduction for acceptance of responsibility. See id. The court recalculated Cannady's total offense level to be 37, his criminal history category to be VI, and his advisory guideline range to be 360 months to life imprisonment. See id. at 11, 16–36. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Cannady to 384 months' imprisonment. See id. at 43–52.

II.

A court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021) superseded by statute on other grounds as recognized by United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020) superseded by statute on other grounds as recognized by Davis, 99 F.4th at 654. A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[]"

3

all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585 U.S. 109, 115–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); Davis, 99 F.4th at 659; McCoy, 981 F.3d at 286 n.9.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). Section 1B1.13(b) lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances;

4

(2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her imprisonment term; (3) a defendant's family circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See U.S.S.G. § 1B1.13(b). A defendant's rehabilitation alone is not an extraordinary or compelling reason, but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction . . . is warranted." U.S.S.G. § 1B1.13(d). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. U.S.S.G. § 1B1.13(e).

Cannady seeks compassionate release under section 3582(c)(1)(A).[2] Cannady argues that

---

[2] 18 U.S.C. § 3582(c)(1)(A) states:

the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of

5

his case presents extraordinary and compelling circumstances based on (1) Cannady's alleged health problems (i.e., hypertension, high cholesterol, diabetes); (2) Cannady's rehabilitation efforts while federally incarcerated; (3) the death of Cannady's mother and father during Cannady's incarceration; (4) Cannady's teenaged son and daughters who Cannady alleges "need[ ] [their] dad"; and (5) changes in the law that allegedly produce a gross disparity between the sentence Cannady received in 2009 and the sentence he would receive today. See [D.E. 206] 5–7. The court addresses Cannady's motion on its merits. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30.

As for Cannady's alleged health problems (i.e., hypertension, high cholesterol, diabetes), the "medical circumstances of the defendant" policy statement requires, in part, that the defendant be "housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;" be "at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency" because of "personal health risk factors and custodial status"; and "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. § 1B1.13(b)(1)(D). "To establish that the risk posed by COVID-19 presents an 'extraordinary and compelling reason' for release [under this subsection], a defendant must allege that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that his preexisting medical condition

>   the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

increases his risk of experiencing a serious, or even fatal, case of COVID-19." United States v. Brown, 78 F.4th 122, 128 (4th Cir. 2023) (quotation and alteration omitted); see High, 997 F.3d at 185. This "inquiry is multifaceted and must account for the totality of the relevant circumstances." Bethea, 54 F.4th at 832 (quotations omitted); see Hargrove, 30 F.4th at 198. Courts examine whether "an inmate shows both a particularized susceptibility to COVID-19 and a particularized risk of contracting the disease at his prison facility." Brown, 78 F.4th at 128 (quotation omitted); see Hargrove, 30 F.4th at 196.

Cannady is 57 years old and states that he has hypertension, high cholesterol, and diabetes. See [D.E. 206] 5. Cannady does not argue that his alleged health problems increase his risk of severe COVID-19 infection and reducing Cannady's sentence does not comport with U.S.S.G. § 1B1.13(b)(1)(D) or any policy statement. See 18 U.S.C. § 3582(c)(1)(A).

To the extent Cannady argues that his hypertension, high cholesterol, and diabetes constitute extraordinary and compelling circumstances, the relevant policy statement requires, in part, that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). Cannady's alleged health problems are not extraordinary and compelling circumstances warranting compassionate release. See, e.g., United States v. Bailey, No. 1:11-CR-10, 2024 WL 589118, at *2–4 (W.D.N.C. Feb. 13, 2024) (unpublished), aff'd, No. 24-6191, 2024 WL 2575901 (4th Cir. May 24, 2024) (per curiam) (unpublished) (denying compassionate release to inmate diagnosed with congestive heart failure, atrial fibrillation, high cholesterol, and hypertension); United States v. Pultz, No. 5:03-CR-30113-5, 2021 WL 2152511, at *2 (W.D. Va. May 26, 2021) (unpublished) (denying compassionate release to inmate diagnosed with

7

hypertension, type two diabetes, obstructive sleep apnea, and obesity); United States v. Buchanan, No. 3:18-CR-199, 2020 WL 5026849, at *2 (E.D. Tenn. Aug. 24, 2020) (unpublished) (denying compassionate release to inmate diagnosed with hypertension); United States v. Mayfield, Cr. No. 07-801, 2020 WL 3604090, at *2–3 (D.N.J. July 2, 2020) (unpublished) (denying motion for compassionate release based on health diagnosis even with approaching release date); United States v. Brown, No. 3:16-CR-209, 2020 WL 2926472, at *1–2 (W.D.N.C. June 3, 2020) (unpublished) (denying compassionate release to inmate with hypertension, diabetes, and pulmonary sarcoidosis). Cannady fails to show that his hypertension, high cholesterol, and diabetes inhibit his ability to provide self-care while federally incarcerated. Accordingly, reducing Cannady's sentence because of his hypertension, high cholesterol, and diabetes does not comport with U.S.S.G. § 1B1.13(b)(1)(B) or any policy statement.

As for Cannady's rehabilitation efforts while federally incarcerated, Cannady's rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); Davis, 99 F.4th at 659; McCoy, 981 F.3d at 286 n.9. Although the court commends Cannady for completing programming and maintaining work assignments, see [D.E. 206] 5, the court expects such efforts from all inmates. Davis, 99 F.4th at 658–59; see, e.g., United States v. Mitchell, No. 8:11-CR-525, 2024 WL 129761, at *4 (D. Md. Jan. 11, 2024) (unpublished); United States v. Anderson, No. 3:17-CR-80-08, 2023 WL 7285411, at *3 (E.D. Va. Nov. 3, 2023) (unpublished); United States v. Baines, No. 1:13CR255-2, 2022 WL 706779, at *5 (M.D.N.C. Mar. 9, 2022) (unpublished). Thus, reducing Cannady's sentence on these grounds does not comport with any policy statement.

The "family circumstances" policy statement lists in relevant part that "[t]he death or incapacitation of the caregiver of the defendant's . . . child who is 18 years of age or older and

8

incapable of self-care because of a mental or physical disability or a medical condition." U.S.S.G. § 1B1.13(b)(3)(C). Therefore, reducing Cannady's sentence because Cannady's parents died during his incarceration does not comport with U.S.S.G. § 1B1.13(b)(3)(C) or any policy statement. As for Cannady's argument that his teenaged son and daughters need Cannady, Cannady does not allege that his children's caretaker has died or become incapacitated. Moreover, Cannady fails to offer any evidence tending to show that Cannady is his children's only remaining caregiver. Thus, reducing Cannady's sentence on these grounds does not comport with U.S.S.G. § 1B1.13(b)(3)(C) or any policy statement.

As for Cannady's argument concerning changes in the law and his career offender status, the "unusually long sentence" policy statement states that if a "defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such a change would produce a gross disparity between the sentence being served and the sentence likely to be imposed when the motion is filed, and only after full consideration of the defendant's individualized circumstances." U.S.S.G. § 1B1.13(b)(6) (emphasis added). In exercising its discretion, the court must consider the section 3553(a) factors. See 18 U.S.C. § 3582(c)(1)(A).

Cannady argues that if the court sentenced him today, the court would no longer sentence his as a career offender. See [D.E. 206] 5–8. Specifically, Cannady cites United States v. Norman, 935 F.3d 232 (4th Cir. 2019), and United States v. Whitley, 737 F. App'x 147 (4th Cir. 2018) (per curiam) (unpublished), and argues that his 1997 federal convictions for conspiracy to manufacture, distribute, and possess with intent to distribute cocaine and cocaine base (crack) no

9

longer qualify as predicate offenses under the career offender statute. See [D.E. 206] 5–8. The court has already considered and rejected this argument. See [D.E. 177] 3–6. Moreover, the court assumed without deciding that Norman required the court to recalculate Cannady's advisory guidelines range, recalculated Cannady's new advisory guidelines range to be 210 to 262 months' imprisonment, and found that there was no gross disparity between the new advisory guidelines range of 210 to 262 months' imprisonment and Cannady's original sentence of imprisonment. See id. at 6–7. The court does not doubt its previous analysis. Moreover, Cannady's sentence did not result from stacked sentences under section 924(c). Cf. McCoy, 981 F.3d at 275, 284–86. Accordingly, the court rejects Cannady's argument that a gross disparity exists between his original sentence and the sentence he would receive if he were sentenced today.

Alternatively, Cannady relies on the two intervening decisions of the Fourth Circuit in Norman and Whitney, not changes in the law. In other words, Cannady's motion amounts to an argument that this court improperly interpreted existing law. Section 2255 provides the appropriate vehicle for such arguments, not a motion for compassionate release. Accordingly, the court declines to reduce Cannady's sentence on these grounds.

The court has considered each of Cannady's arguments and finds that reducing Cannady's sentence would not comport with any policy statement. Cannady fails to establish the existence of extraordinary and compelling circumstances warranting a sentencing reduction. Accordingly, the court denies Cannady's motion for compassionate release. See [D.E. 206].

As for the "other reasons" policy statement, the court assumes without deciding that Cannady's health problems, rehabilitation efforts, and family circumstances are extraordinary and compelling reasons under section 3582(c)(1)(A). The court also assumes without deciding that the policy statement requires the court to consider the death of Cannady's parents during his

10

incarceration, Cannady's belief that his teenaged son and daughters need Cannady out of prison, and changes in Fourth Circuit precedent. The section 3553(a) factors, however, counsel against reducing Cannady's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Cannady is 57 years old and engaged in serious criminal behavior involving 601 grams of crack cocaine base (crack), 425 grams of powder cocaine, and 340 oxycodone pills, resisted arrest, assaulted an officer during his arrest, and had to be tased in order to be subdued. See PSR ¶¶ 3–9; Sent. Tr. at 16–45. Cannady then attempted to obstruct justice from the jail and perjured himself at the sentencing hearing. See Sent Tr. at 16–45; PSR ¶ 5. Moreover, Cannady is a violent, recidivist drug dealer. From January 1, 1988, to February 1997, Cannady participated in a large-scale drug conspiracy involving cocaine base (crack) and cocaine and distributed over 7.3 kilograms of crack cocaine. See PSR ¶ 33; Sent. Tr. 37–38. In May 1997, Cannady pleaded guilty in this court to that criminal conduct and received a sentence of 144 months' imprisonment and 60 months' supervised release. See PSR ¶ 33. On November 2, 1999, the court reduced Cannady's sentence to 108 months' imprisonment. See id. While on federal supervised release, Cannady committed additional criminal conduct. As a result, this court revoked his federal supervised release and sentenced Cannady to 30 months' imprisonment. See id. The court later reduced that sentence to 16 months' imprisonment, and Cannady was released on May 30, 2006. See id.

Cannady's life of crime did not end with his second release from federal prison. Instead, on August 10, 2007, Cannady possessed with the intent to manufacture/sell/ deliver cocaine and was arrested. See id. at ¶ 35. On April 23, 2008, Cannady pleaded guilty in state court to that felony and received a suspended sentence of 11 to 24 months' imprisonment and 24 months'

11

probation. See id. Cannady promptly violated his state probation with new criminal conduct on July 9, 2008, and Cannady's state probation was terminated unsuccessfully. See id. at ¶¶ 3, 35.

Cannady has led an unrelenting life of crime. Cannady's criminal history began at age 18. See id. at ¶ 11. Cannady has convictions for, inter alia, assault and battery, fictitious information to an officer, fictitious/canceled/revoked/altered registration car tag (two counts), larceny, resist/obstruct a public officer (two counts), driving while impaired (five counts), second-degree kidnapping, assault inflicting serious injury, injury to personal property, escape from a local jail, simple worthless check (two counts), conspiracy to manufacture, distribute, and possess with intent to distribute cocaine and cocaine base, and possession with intent to manufacture/sell/deliver schedule II controlled substance. See id. at ¶¶ 11–35. In the kidnapping case, Cannady kidnapped the female victim and inflicted serious bodily injury by striking her on the head with his fist and a saw. See id. at ¶ 24.

Cannady committed his latest federal offense at age 40 while on probation for a state drug felony conviction. See id. at ¶ 39. Furthermore, Cannady has performed terribly on supervision. See id. at ¶¶ 24, 33, 35, 39. Additionally, during Cannady's latest trip to a federal prison (his third), Cannady sustained infractions for being absent from assignment (twice) and phone abuse-disrupt monitoring. See [D.E. 169-1] 2. Nonetheless, Cannady has taken some positive steps while incarcerated on his latest federal sentence. See id. at 1–3; cf. Pepper, 562 U.S. at 491; Chambers, 956 F.3d at 671–75.

The court does not believe Cannady or credit Cannady's claims of reformation. In fact, Cannady is one of the least credible human beings and most committed criminals that this court has encountered. The court has considered the entire record, Cannady's underlying health issues, rehabilitation efforts, family circumstances, and all relevant factors under the section 3553(a)
12

factors. Having considered the entire record, as well as Cannady's arguments, and the need to punish Cannady for his horrible criminal behavior, to incapacitate Cannady, to promote respect for the law, to deter others, and to protect society, the court denies Cannady's motion for compassionate release. See, e.g., Concepcion v. United States, 597 U.S. 481, 498–501 (2022); Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 480–81; United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Roane, 51 F.4th 541, 551–53 (4th Cir. 2022); Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

Under 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's term of imprisonment if the defendant has been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered" by changes to the United States Sentencing Guidelines. 18 U.S.C. § 3582(c)(2); see Martin, 916 F.3d at 395; United States v. Williams, 808 F.3d 253, 257–58 (4th Cir. 2015). A sentence reduction under 18 U.S.C. § 3582(c)(2) must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(2); Williams, 808 F.3d at 257. The Sentencing Commission policy statement in U.S.S.G. § 1B1.10 applies to section 3582(c)(2) proceedings. See Dillon v. United States, 560 U.S. 817, 819, 821 (2010); Martin, 916 F.3d at 396; Williams, 808 F.3d at 258.

The sentencing court follows a two-step inquiry when reviewing motions for sentence

reductions under section 3582(c)(2). See Dillon, 560 U.S. at 826–27; Martin, 916 F.3d at 396; Williams, 808 F.3d at 258. First, the sentencing court must review the Sentencing Commission's instructions in U.S.S.G. § 1B1.10 "to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Williams, 808 F.3d at 257–58 (quotation and emphasis omitted). At this step, section 1B1.10 requires the court to begin by "determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing." Dillon, 560 U.S. at 827 (cleaned up). If the court determines that the defendant is eligible for a sentence reduction, "the court moves to the second step and determines the extent of the reduction." Williams, 808 F.3d at 258. At step two, section 3582(c)(2) "instructs a court to consider any applicable [section] 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827; see, e.g., United States v. Navarro-Melendez, No. 1:18-CR-91, 2024 WL 1722524, at *1 (W.D.N.C. Apr. 22, 2024) (unpublished); United States v. Pledger, No. 2:12-CR-23, 2017 WL 3495723, at *1–2 (E.D.N.C. Aug. 14, 2017) (unpublished).

In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza, 585 U.S. at 115–20; Pepper, 562 U.S. at 480–81, 490; Smith, 75 F.4th at 464–66; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 329–30; McDonald, 986 F.3d at 410–12; Martin, 916 F.3d at 395–98.

Cannady seeks a sentence reduction based on Amendment 821 Part A. See [D.E 221, 224]. Amendment 821 Part A, which became effective on November 1, 2023, amended Chapter Four

14

of the Sentencing Guidelines by striking the old section 4A1.1(d). See U.S.S.G. app. C, amend. 821. Before Amendment 821, section 4A1.1(d) added two status points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Id. § 4A1.1(d) (2021). Section 1B1.10 authorizes a court to reduce a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) using Amendment 821. See id. § 1B1.10(d).

The court, however, need not consider Cannady's motion for a sentence reduction. Although Amendment 821 applies to Cannady, it does not lower Cannady's advisory guidelines imprisonment range. See [D.E. 288, 228-1, 228-2]. Accordingly, the court denies Cannady's motions for a sentence reduction. See [D.E. 221, 224].

IV.

In sum, the court DENIES as moot defendant's motion for the court to forward his motion for a sentence reduction to the United States Attorney's Office for the Eastern District of North Carolina [D.E. 207], DENIES as moot defendant's motion to expedite [D.E. 208], and DENIES defendant's motions for compassionate release [D.E. 206] and a sentence reduction [D.E. 221, 224].

SO ORDERED. This **20** day of June, 2025.

JAMES C. DEVER III
United States District Judge